IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAVIER FLORES GAYTAN,           )
                                )
            Petitioner,          )
                                )
      v.                         )      1:17CV979
                                )
                                )
MICHAEL HARDEE,                 )
                                )
                                )
            Respondent.          )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed an answer (Docket Entry 5), a motion for summary judgment (Docket Entry 6), and a supporting brief (Docket Entry 7). Petitioner, in turn, filed a response (Docket Entry 10) to the motion for summary judgment and Respondent filed a reply (Docket Entry 11). The Petition (Docket Entry 1) also contains a request for discovery to which Respondent filed a response (Docket Entry 8) and to which Petitioner filed a reply (Docket Entry 9). This matter is now prepared for a ruling.

### Background

On September 23, 2013, in Superior Court, Guilford County, Petitioner was convicted after a jury trial of trafficking cocaine by possession and trafficking cocaine by transportation, and was sentenced to two consecutive terms of 175-222 months of imprisonment. (Docket Entry 1, Ex. A at 56-57, 59-62.) On October 7, 2014, the North Carolina Court of Appeals found no error in his convictions. *See State v. Gaytan*, 236 N.C. App. 658 (2014). On December 22, 2015, Petitioner filed a motion for appropriate relief ("MAR") in Superior Court, Guilford

County, which was denied on July 25, 2016. (Docket Entry 1, Exs. G-H.) On November 14, 2016, Petitioner next filed a certiorari Petition in the North Carolina Court of Appeals, which was denied on November 28, 2016. (*Id.* at Exs. I and K.) Petitioner then filed the instant Petition in the Eastern District of North Carolina on October 25, 2017 and it was transferred the next day to this Court. (Docket Entry 1.)

### Background Facts

The North Carolina Court of Appeals described the factual background of this case as follows:

> In an effort to receive more favorable sentencing on three felony drug charges, Fidel Salazar Rangel ("Rangel") agreed to cooperate with Greensboro police as part of a plea deal. Rangel provided information and assistance—in cases unrelated to the present case—that led to multiple arrests and seizures of illegal narcotics. As part of his plea agreement, and relevant to this appeal, Rangel contacted Jose Gonzalez-Franco ("Gonzalez-Franco") to arrange the purchase of one kilogram of cocaine. Gonzalez-Franco agreed to meet Rangel in the parking lot of a Hooters restaurant ("the restaurant") on High Point Road, outside Greensboro. Detectives from the Greensboro Police Department prepared to monitor the transaction.
>
> Rangel was outfitted with a hidden audio recording device. Detective Carlos Monge ("Detective Monge") was assigned to monitor the recording in real time because he spoke both Spanish and English, and the police thought the transaction would likely involve Spanish. Other detectives took positions near the restaurant. Rangel, who was waiting in the restaurant parking lot, observed Gonzalez-Franco arrive in a pickup truck ("the truck") with two other men, and Rangel relayed this information to the detectives. Gonzalez-Franco left the truck and approached Rangel. After a short period of time, the two other men left the truck and joined Rangel and Gonzalez-Franco. These two men were later identified as Javier Flores Gaytan ("Defendant") and his brother Agustin Gaytan. All four men then entered the restaurant, where they remained for approximately fifteen minutes.

2

> When the four men exited the restaurant, Defendant, Gonzalez-Franco, and Agustin Gaytan returned to the truck. Agustin Gaytan entered the truck, and Defendant removed a brown bag ("the bag") from the truck. Defendant and Gonzalez-Franco then walked to Rangel's vehicle, where Defendant entered the back seat and Gonzalez-Franco entered the front passenger side seat. Rangel was sitting in the driver's seat. Defendant, who had the bag with him in the back seat, removed the cocaine from the bag for Rangel to see. Detective Monge, who was monitoring the conversation in Rangel's vehicle, alerted the other detectives that the cocaine was in Rangel's vehicle. The detectives then arrested Defendant, along with the other men involved. Approximately one kilogram of cocaine was recovered from the back seat of Rangel's vehicle where Defendant had been sitting.
>
> Defendant was indicted for one count each of trafficking in cocaine by possession, trafficking in cocaine by transportation, and conspiracy to traffic in cocaine. Gonzalez-Franco pleaded guilty to trafficking in cocaine by possession, trafficking in cocaine by transportation, and conspiracy to traffic in cocaine. Gonzalez-Franco was sentenced to consolidated active sentences of 175 months to 222 months for each charge. As part of Rangel's plea agreement, he testified for the State at Defendant's trial. The jury found Defendant not guilty of the conspiracy charge, but guilty of trafficking in cocaine by possession and trafficking in cocaine by transportation. The trial court sentenced Defendant to two consecutive active sentences of 175 months to 222 months.

*Gaytan*, 236 N.C. App. at 658.

## Petitioner's Claims

Petitioner contends: (1) that he was denied federal due process because the "presentation of [Officer] Monge's wire translation to the jury violated [his] due process rights," and the state focused on Officer Monge's wire transcription in its closing arguments; (2) Officer Monge's testimony about the wire recording deprived Petitioner of his state constitutional rights; and (3) trial counsel was ineffective for failing to object on due process

3

grounds to Officer Monge's interpretation of the wire recording, to request that the wire recording be played for the jury, and to request that the wire recording be translated for the jury by a disinterested interpreter. (Docket Entry 1 at 11-32.) As explained in greater detail below, these grounds are time-barred.

## Discussion

Respondent requests dismissal on the ground that the Petition was filed beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). (Docket Entry 7 at 5-9.) In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period *begins to run from* the latest of several potential starting dates:
>
> (A) *the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;*
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Green v. Johnson*, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added). The record does not reveal any meaningful basis for addressing subparagraphs (B)-(D) of § 2244(d)(1).

4

Under Subparagraph (A), Petitioner's one-year limitation period began on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Court must therefore ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended.

Here, the North Carolina Court of Appeals affirmed Petitioner's criminal convictions on October 7, 2014. *See Gaytan*, 236 N.C. App. at 658. Petitioner did not further pursue direct review. Petitioner's convictions thus became final 35 days later in mid-November of 2014. *See* N.C. R.App. P. Rules 14(a) and 15(b) (15 days to file from the issuance of the Court of Appeals' mandate to file notice of appeal and/or PDR in North Carolina Supreme Court) and Rule 32(b) (unless court orders otherwise, mandate issues 20 days after written opinion filed); *Saguilar v. Harkleroad*, 348 F. Supp. 2d 595, 598-601 (M.D.N.C. 2004) (Osteen, Sr., J. *adopting recommendation of* Eliason, M.J.), *appeal dismissed*, 145 F. App'x 444 (4th Cir. 2005). Petitioner's one-year limitation period therefore ran from mid-November of 2014 until it expired one year later in mid-November of 2015.

The instant action would have been subject to statutory tolling if Petitioner had a properly filed post-conviction petition pending in state court during the one-year limitations period. 28 U.S.C. § 2244(d)(2); *see Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir. 1999) (state collateral filings generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)"). However, statutory tolling does not apply here because none of

5

Petitioner's state filings were made prior to the expiration of the limitations period in November of 2015. In other words, Petitioner's time to file in this Court expired before he made any state court filings. Filings made after the limitations period has ended do not revive or restart it. *Minter v. Beck*, 230 F.3d 663, 665 (4th Cir. 2000). Because Petitioner did not file his federal habeas Petition until October 25, 2017, it is time-barred by almost two years.

Petitioner does not dispute the foregoing time-line.[1] Instead, he argues that the statute of limitations does not bar his claims even though his conviction became final almost two years prior because he is actually innocent of the crimes for which he was convicted. (Docket Entry 1 at 32-36.) *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) recognized an actual innocence exception to the relevant time limitation. However, to establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see McQuiggin*, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

---

[1] Petitioner does not invoke subsections (c)-(d). Of these, the only plausible subsection that could have been argued was subsection (d), which provides that a petitioner may file an application for a writ of habeas corpus within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner knew of the recording in question during his trial if for no other reason than it was mentioned during cross-examination (Docket Entry 1, Ex. B at 756) and, consequently, he knew about the predicate for all of his claims at the time of trial. As a result, this subsection does not provide Petitioner with a later starting date of the statute of limitations.

Petitioner's state filings were made prior to the expiration of the limitations period in November of 2015. In other words, Petitioner's time to file in this Court expired before he made any state court filings. Filings made after the limitations period has ended do not revive or restart it. *Minter v. Beck*, 230 F.3d 663, 665 (4th Cir. 2000). Because Petitioner did not file his federal habeas Petition until October 25, 2017, it is time-barred by almost two years.

Petitioner does not dispute the foregoing time-line.[1] Instead, he argues that the statute of limitations does not bar his claims even though his conviction became final almost two years prior because he is actually innocent of the crimes for which he was convicted. (Docket Entry 1 at 32-36.) *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) recognized an actual innocence exception to the relevant time limitation. However, to establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see McQuiggin*, 133 S.Ct. at 1935. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

---

[1] Petitioner does not invoke subsections (c)-(d). Of these, the only plausible subsection that could have been argued was subsection (d), which provides that a petitioner may file an application for a writ of habeas corpus within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner knew of the recording in question during his trial if for no other reason than it was mentioned during cross-examination (Docket Entry 1, Ex. B at 756) and, consequently, he knew about the predicate for all of his claims at the time of trial. As a result, this subsection does not provide Petitioner with a later starting date of the statute of limitations.

Here, despite his contentions to the contrary (Docket Entry 10 at 4-6), Petitioner has done no more than assert in a conclusory manner that he is innocent, which is insufficient to satisfy this exception. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).[2] Petitioner asserts that the new and reliable evidence in question is that of the wire recording described in the factual background set forth above and that a "disinterested translation of the wire [recording] would prove his innocence." (*Id.* at 33.) Petitioner contends further that the recording "contains wholly exculpatory evidence or evidence that has significant impeachment value." (*Id.* at 36.)

However, Petitioner has not provided the Court with this recording, a transcript of its contents,[3] or even a specific allegation as to what it contains. In fact, it appears that Petitioner has never listened to this recording.[4] Nor does Petitioner explain in his pleadings specifically how the wire recording would exculpate him or how it would impeach a witness.[5] And, in

---

[2] The doctrine of equitable tolling also applies to the time bar set forth in Section 2244. *See Holland v. Florida*, 560 U.S. 631, 648 (2010). Equitable tolling may excuse an untimely filing when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Beyond asserting his meritless actual innocence claim, however, Petitioner has not made any equitable tolling argument and none is apparent on the face of the pleadings.

[3] Petitioner has provided Officer Monge's notes, which are written in the form of a partial transcript, but they do not support his assertion of actual innocence. (Docket Entry 9, Ex. C.)

[4] At trial, counsel explained to the state court that he had not been able to "get the CD with a computer to [Petitioner]" and so Petitioner had not had an opportunity to listen to the recording in question. (Docket Entry 1, Ex. B at 758.)

[5] At trial, Petitioner testified under oath that he "didn't hear anything" said in the front seat during the drug sale, as he sat in the back seat. (Docket Entry 1, Ex. B at 761.) If this is indeed so, it is difficult to understand how Petitioner would have reason to believe that the recording demonstrates his actual innocence. At trial, Petitioner also testified that he "didn't speak" with anyone while in the vehicle. (*Id.* at 762.) If Petitioner's point is that the wire recording would help demonstrate this and is therefore useful for impeachment purposes, this does not help Petitioner either. Even if Petitioner did demonstrate that he was silent in the vehicle, there is still ample other additional independent

7

fact, the wire recording in question is not new evidence, given that it existed at the time of trial and counsel had possession of it. (Docket Entry 1, Ex. B at 74.) *See Davis v. Butler*, No. CIV.A. 1:14-06250, 2015 WL 500505, at *6 n.5 (S.D.W. Va. Feb. 4, 2015) (unpublished) (collecting cases for the proposition that an actual innocence claim requires *new* evidence).

Beyond this, and independent of the wire recording, there was still a great deal of evidence demonstrating Petitioner's guilt. By his own admission, Petitioner was found in the back seat of a vehicle containing a kilogram of cocaine. (Docket Entry 1, Ex. B at 755-56, 761.) Officers testified that Petitioner carried the bag containing the cocaine to the vehicle. (*Id.* at 470, 530, 573, 666.) Rangel, the confidential informant, testified that after getting into the back seat of the vehicle, Petitioner removed the cocaine from the bag so that he (Rangel) could inspect it. (*Id.* at 642-43.) None of this suggests actual innocence. For all these reasons, the Court concludes that Petitioner has failed to demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt. *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012).

Petitioner's arguments to the contrary are not persuasive. Petitioner contends that Respondent has suppressed the wire recording. (Docket Entry 1 at 34.) However, the state made the recording available to Petitioner's counsel pre-trial. (Docket Entry 1, Ex. B at 74.) Trial counsel later gave the recording to appellate counsel. (*Id.*, Ex. N and P.) Appellate counsel, apparently at Petitioner's request, then gave the recording to his fiancé and other

---

evidence of his guilt, discussed in more detail above. This includes evidence that Petitioner carried the bag containing the cocaine to the vehicle where it was to be sold and removing the cocaine from the bag so that it could be inspected.

8

close family members, whereupon it was lost. (*Id.*) The fact that neither trial nor appellate counsel have an additional copy of the wire recording, and the fact that Petitioner's fiancé lost it, does not rise to the level of a constitutional violation, nor impose upon Respondent additional constitutional or statutory obligations. Nor does it appear that Petitioner, who was represented by counsel, sought to secure the wire recording during his state court post-conviction proceedings. In light of all this, Petitioner may not rely upon the actual innocence gateway to review and his grounds for relief are therefore time-barred.

Finally, Petitioner has also filed a request for discovery. (Docket Entry 1 at 37-38.) "Unlike other civil litigants, a § 2254 habeas petitioner 'is not entitled to discovery as a matter of ordinary course.'" *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). Instead, to conduct discovery, a habeas petitioner "must provide reasons for the request," Rule 6(b), Rules Governing Sect. 2254 Proceedings, that establish "good cause," Rule 6(a), Rules Governing Sect. 2254 Proceedings. "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief." *Stephens*, 570 F.3d at 204. Moreover, "[a]n evidentiary hearing is not a fishing expedition for facts as yet unsuspected, but is instead an instrument to test the truth of facts *already alleged* in the habeas petition." *Lenz v. Washington*, 444 F.3d 295, 304 (4th Cir. 2006) (internal quotation marks and citation omitted).

Here, Petitioner contends that "justice would be served by allowing [him] to obtain from the Guilford County District Attorney's Office a copy of the wire recording, so that [he] may transcribe the recording and present the transcription to the Court as evidence of his innocence." (Docket Entry 1 at 37-38.) Beyond this, Petitioner further "requests that the

9

Case 1:17-cv-00979-TDS-JLW   Document 12   Filed 05/15/18   Page 9 of 11

Court direct the parties to expand the record of this petition, pursuant to Habeas Rule 7, once the recording is obtained and transcribed by Petitioner, such that the record includes a true and accurate account of the statements on the wire recording." (*Id.* at 38.)

Petitioner's requests should be denied. First, as explained above, Petitioner's claims are time-barred and so discovery is unwarranted. Second, even setting aside the question of time-bar, Petitioner has failed to set forth good cause suggesting that if he received the wire recording in question he would be able to meaningfully demonstrate that he is entitled to habeas corpus relief. Instead, Petitioner offers only speculation that the wire-recording might exculpate him or impeach witness testimony. Third, as noted, the recording was provided to Petitioner's trial counsel. Fourth, the Fourth Circuit frowns on discovery in circumstances such as these; that is, where a federal habeas Petitioner failed to seek discovery during his state post-conviction proceedings.[6] The requests should be denied.[7]

---

[6] *See, e.g., Spates v. Clarke*, 547 F. App'x 289, 295 n.5 (4th Cir. 2013) ("We note the Commonwealth's objection to the district court's decision to supplement the record on federal habeas review with a transcript that was not submitted to the Virginia court for its consideration on appeal and, in light of the Supreme Court's decision in *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), we share the Commonwealth's concern. As Spates points out, *Cullen* involved mitigation evidence that was first created in a federal evidentiary hearing, whereas the February 12 transcript could have been (but was not) submitted to the Virginia Court of Appeals. Nevertheless, the district court's consideration of the February 12 transcript did in fact result in precisely what AEDPA seeks to avoid—a "[f]ederal court [ ] sitting in habeas [operating as] an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 1401. The district court's *sua sponte* decision to reach for evidence not submitted to it or to the last state court that considered the matter, although not as extreme as the situation in *Cullen*, thus seems at least inconsistent with the spirit of *Cullen* and the deference we owe to the procedural rules and substantive judgments of state courts. In the end, however, it is unnecessary for us to resolve this dispute in the Commonwealth's favor because, even considering the February 12 transcript, it is clear that Spates's Sixth Amendment claim fails under AEDPA, and that the district court erred in concluding otherwise.").

[7] Petitioner also requests an evidentiary hearing. (Docket Entry 1 at 35.) However, for the same reasons set forth above, no hearing is warranted.

10

## CONCLUSION

Petitioner's grounds are time-barred. Neither an evidentiary hearing, nor discovery, nor oral argument, are warranted.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (Docket Entry 6) be **GRANTED**, that the Petition (Docket Entry 1) be **DISMISSED**, and that Judgment be entered dismissing this action.

                                                  Joe L. Webster
                                        United States Magistrate Judge

May 15, 2018
Durham, North Carolina